# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

KATHRAN RANDOLPH                                    CIVIL ACTION

VERSUS                                                       15-654-SDD-EWD

EAST BATON ROUGE PARISH
SCHOOL BOARD, ET AL.


## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] by Defendants David Tatman, Superintendent Warren Drake, Domoine Rutledge, Millie Williams, and Sharmayne Rutledge ("Defendants") and the *Motion for Summary Judgment*[2] by Defendant East Baton Rouge Parish School Board ("the School Board"). Plaintiff Kathran Randolph ("Plaintiff") has filed a *Motion for Partial Summary Judgment.*[3] All Parties have filed *Oppositions*[4] to the cross motions, and all Parties have filed *Replies.*[5] For the following reasons, the Court finds that summary judgment is proper in favor of the Defendants and the School Board, and Plaintiff's motion should be denied.

## I.    FACTUAL BACKGROUND

Plaintiff first became employed by the East Baton Rouge Parish School Board in 1988 as a teacher. She resigned in June 2003 to accept a position with another school system, but was later rehired by the School Board in May 2007. Before the start of the

---

[1] Rec. Doc. No. 107.
[2] Rec. Doc. No. 108.
[3] Rec. Doc. No. 109.
[4] Rec. Doc. Nos. 110, 112-1 & 116-2.
[5] Rec. Doc. Nos. 126, 128, & 137.
Document Number: 43863

2008-09 school year, Plaintiff was named Assistant Principal at Belaire High School.  Two years later, she was reassigned to the Assistant Principal position at Twin Oaks Elementary School as set forth in a letter dated August 20, 2010 from Millie Williams ("Williams"), Executive Director for Human Resources.[6]   Plaintiff contends that, pursuant to Louisiana Revised Statute 17:144, she and the School System entered into a written employment contract on July 1, 2009 that was to run for two years, ending July 1, 2011.[7]  Plaintiff contends that, before her contract ended, in August 2010, she was reassigned from Assistant Principal at Belaire High School to Assistant Principal at Twin Oaks Elementary.[8]   Before the 2012-13 school year, Plaintiff was selected to serve as the interim Principal at Twin Oaks as reflected by a June 24, 2013 letter from Williams.[9]

In August 2014, a parent filed a complaint against Plaintiff regarding two distinct events which occurred while Plaintiff was interim Principal at Twin Oaks.  Plaintiff claims the student had violently attacked a teacher at Twin Oaks.[10]  In response, Sharmayne Rutledge, Executive Director for School Leadership, scheduled a meeting between Plaintiff and the parent.  The issues were not resolved at the meeting, and the complaint was sent to Williams for further investigation.  Subsequently, on September 2, 2014, Plaintiff was placed on leave with pay pending the investigation.[11]  Plaintiff signed a form which provides that Plaintiff must "remain accessible to the Office of Human Resources during [her] regular working hours."[12]  Although the administrative leave was originally to

---

[6] Rec. Doc. No. 107-3 at 1.
[7] *See* Rec. Doc. No. 109-2 at 12.
[8] *Id.* at 13.
[9] Rec. Doc. No. 107-3 at 2.
[10] Rec. Doc. No. 109-2 at 38-39.
[11] Rec. Doc. No. 107-3 at 3.
[12] *Id.*
Document Number: 43863

last for a two day period, the investigation continued, and on September 4, 2014, Plaintiff's administrative leave was extended indefinitely.

On September 4, 2014, Plaintiff filed a grievance against Williams and S. Rutledge claiming they failed to comply with School System policies regarding the investigation and paid administrative leave.[13] Also on September 4, 2014, Plaintiff sent a text message to a School Board member which referenced suicide, and Plaintiff immediately turned off her cellphone.[14] Board officials were advised of this text message and determined that it was necessary for Plaintiff to be cleared by a fitness-for-duty evaluation before she could return to work.[15] Further complicating matters, and despite the requirement to remain accessible during work hours, Defendants maintain that it was difficult to communicate with Plaintiff as she would only communicate via letters.[16] On September 30, 2014, Plaintiff failed to appear at a meeting to discuss the investigation of the parental complaint, although a letter to Plaintiff from Williams, dated September 26, 2014, advised Plaintiff that her "failure to appear will be considered job abandonment as you are on administrative leave with pay whereby you are still an employee of the East Baton Rouge Parish School System."[17]

In response, on September 30, 2014, Plaintiff claims former Superintendent Dr. Bernard Taylor ("Dr. Taylor") instituted disciplinary proceedings against Plaintiff via a certified letter.[18] However, the words "disciplinary proceeding" appear nowhere in this

---

[13] Rec. Doc. No. 109-2 at 41-43.
[14] *See* Rec. Doc. No. 107-4 at 17 (Deposition of Kathran Randolph, p. 68, lines 2-6, 11).
[15] Rec. Doc. No. 107-3 at 7.
[16] *Id.* at 4-5.
[17] Rec. Doc. No. 107-3 at 8.
[18] Rec. Doc. No. 109-2 at 45.
Document Number: 43863

letter. Plaintiff contends this letter failed to provide notice of her rights to respond and/or request a hearing.

Due to Plaintiff's allegedly "erratic" behavior, lack of cooperation, and failure to comply with requests to remain accessible and present herself for a fitness for duty evaluation, Plaintiff was removed as interim Principal of Twin Oaks Elementary and was set to be reassigned to a teaching position following a fitness for duty evaluation.[19] Plaintiff maintains this was a second disciplinary proceeding instituted against her charging her with willful neglect of duty.[20] This letter did notify Plaintiff of her right to respond; however, Plaintiff complains that it failed to advise her of her right to request a hearing. Rather than completing the process requested by the School Board, on October 21, 2014, Plaintiff submitted a Sick Leave Request claiming that her injury/illness was due to a work-related injury.[21] On October 23, 2014, Plaintiff submitted a letter to Dr. Taylor responding to the September 30 letter wherein Plaintiff challenged her status as "interim" under Louisiana law and claimed that she was entitled to a hearing.[22] When Dr. Taylor did not respond to Plaintiff's October 23 letter, she sent a second letter to Taylor on November 10, 2014, again demanding an "open and public hearing."[23]

Arrangements were later made for Plaintiff to pick up a paycheck from the Central Office on November 14, 2014.[24] Plaintiff claims that Williams refused to give Plaintiff her check until she met with "Attorney Rutledge" – Domoine Rutledge ("D. Rutledge").[25]

---

[19] Rec. Doc. No. 107-3 at 9.
[20] Rec.Doc. No. 109-2 at 62.
[21] Rec. Doc. No. 107-3 at 10.
[22] Rec.Doc. No. 109-2 at 64.
[23] *Id.* at 65.
[24] Plaintiff cites to Exhibit 27; however, this document (Rec. Doc. No. 109-2 at 66) does not reflect these facts.
[25] Rec. Doc. No. 109-1 at 6.
Document Number: 43863

During this meeting, Plaintiff contends D. Rutledge read a letter from himself to Plaintiff, dated November 12, 2014,[26] which was in response to Plaintiff's November 10, 2014 request for a hearing. Plaintiff further claims that D. Rutledge's communication erroneously advised that her request for a hearing was untimely, she was not entitled to a hearing, and any disciplinary action taken against her by Dr. Taylor was final. Plaintiff claims D. Rutledge continued to "badger"[27] her, alleged that she was "playing games," and advised this paycheck would be her last.[28]

Following her medical leave, Plaintiff was released to return to work part-time on February 13, 2015.[29] However, no part-time positions were available to accommodate Plaintiff's medical release.[30] Further, because of the text message referencing suicide, the School Board still required Plaintiff to pass a fitness for duty evaluation before returning to work in any position. This evaluation was scheduled for February 25, 2015. Although Plaintiff appeared for the evaluation, she did not fully cooperate with the evaluator and presented to the evaluator a letter "delimiting the scope of inquiry or evaluation process."[31] The evaluator refused to perform the evaluation in accordance with Plaintiff's limitations, and Plaintiff was never declared fit for duty. Plaintiff claims she was "forced" to attend the fitness for duty examination, and she continued to be assigned to elementary teaching positions although she was not certified and had never taught at the elementary level.[32]

---

[26] Rec. Doc. No. 109-2 at 67.
[27] Rec. Doc. No. 109-1 at 7.
[28] This is according to Plaintiff's "Statement in Support of Motion for Summary Judgment," signed under penalty of perjury, Rec. Doc. No. 109-2 at 1.
[29] Rec. Doc. No. 107-3 at 11.
[30] *Id.* at 12.
[31] *Id.* at 13-14.
[32] Rec. Doc. No. 109-1 at 7.
Document Number: 43863

On August 7, 2015, Plaintiff was reassigned to a teaching position at EBR Readiness on August 12, 2015;[33] however, Plaintiff never reported to work. Instead, on February 15, 2016, Plaintiff submitted her "Notice of Resignation Due to Retirement,"[34] which was accepted by the School Board on March 17, 2016.[35] Plaintiff contends that, beginning May 2015, she stopped receiving any salary, Defendants refused to complete any disciplinary matters brought against Plaintiff, and Plaintiff's grievances have never been acknowledged or investigated. Plaintiff claims she has lost more than $80,000.00 in salary and benefits, and Plaintiff contends she was "forced" to resign and retire.[36]

Prior to submitting her resignation, on October 5, 2015, Plaintiff filed a *Complaint* instituting this lawsuit.[37] Defendants characterize Plaintiff's *Complaint* as "39 sprawling pages of confusing, argumentative and scandalous allegations."[38] Plaintiff named as Defendants the following persons or entities: the East Baton Rouge Parish School System ("School System"); David Tatman ("Tatman"), a School Board member elected President in January 2014; Dr. Taylor, the former superintendent of the Board; Superintendent Warren Drake ("Drake"), who succeeded Dr. Taylor on July 1, 2015; Domoine Rutledge ("D. Rutledge"); Millie Williams ("Williams"); and Sharmayne Rutledge ("S. Rutledge").[39] D. Rutledge, Williams and S. Rutledge were School System employees at all relevant times to this litigation. The individually named Defendants were sued in their official and individual capacities. Dr. Taylor was subsequently dismissed from this

---

[33] Rec. Doc. No. 107-3 at 17.
[34] *Id.* at 18.
[35] *Id.* at 19.
[36] Rec. Doc. No. 109-1 at 7.
[37] Rec. Doc. No. 1.
[38] Rec. Doc. No. 107-2 at 4.
[39] Rec. Doc. No. 1 at ¶¶ 6-12. Plaintiff also named Stacie Williams and Jane Doe as Defendants, but these Defendants were later voluntarily dismissed by Plaintiff.
Document Number: 43863

case at Plaintiff's request on May 20, 2016,[40] yet Plaintiff included him as a Defendant in her *Amended Complaint.*[41] Dr. Taylor remains a terminated Defendant, and it does not appear that he was ever served. Accordingly, Dr. Taylor is not a Defendant in this matter.

Plaintiff brings suit pursuant to 42 U.S.C. § 1983 and claims that her constitutional rights were violated in that she was deprived of her property interest in continued state employment without procedural and substantive due process. Plaintiff seeks equitable and prospective injunctive relief from the Defendants. Specifically, Plaintiff seeks relief from the School System, Tatman, and Drake in their official capacities only (regarding Plaintiff's claim for prospective relief), ordering the Defendants to reinstate Plaintiff's employment contract as well as back pay, accrued benefits, costs and attorney fees. Plaintiff has also asserted federal claims of hostile work environment and constructive discharge under Section 1983, and various violations of Louisiana law, including intentional infliction of emotional distress ("IIED").

The Court now turns to the three summary judgment motions brought by the School Board, the individual Defendants Tatman, Drake, D. Rutledge, Williams, and S. Rutledge, and Plaintiff. Because many issues overlap, the Court's discussion and analysis will often address more than one motion.

## II.    LAW AND ANLYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[40] Rec. Doc. No. 34.
[41] Rec. Doc. No. 47.
Document Number: 43863

of law."[42]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[43]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[44]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[45]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[46]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[47]  All reasonable factual inferences are drawn in favor of the nonmoving party.[48]  However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[49]  "Conclusory allegations unsupported by specific

---

[42] Fed. R. Civ. P. 56(a).

[43] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[44] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).

[45] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

[46] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[47] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[48] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[49] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

Document Number: 43863

facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint.'""[50]

The parties have sought a bench trial in the present case.

The Fifth Circuit has recognized that "a district court has somewhat greater discretion to consider what weight it will accord the evidence [presented on a motion for summary judgment] in a bench trial than in a jury trial."[51]  If a "[bench] trial on the merits will not enhance the court's ability to draw inferences and conclusions, then a district court properly should 'draw his inferences without resort to the expense of trial.'"[52] However, the Fifth Circuit has cautioned that "a district court must be aware that assessments of credibility come into sharper focus" at the time of trial, therefore, "**even at the summary judgment stage a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result**."[53]

Accordingly, the summary judgment motions before the Court are analyzed in accordance with this standard, and the Court will apply broader discretion in weighing the evidence presented.

### B.  Summary Judgment Motion by the School Board/Plaintiff

The School Board has moved for summary judgment, and Plaintiff has moved for partial summary judgment, on essentially the same issues; thus, the Court will discuss these motions together.  The School Board argues it is entitled to summary judgment on

---

[50] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[51] *Turner v.* Pleasant, 10-cv-7823, 2013 WL 823426 at*7 (E.D. La. Mar. 6, 2013)(quoting *In re Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991)).
[52] *Id.* (quoting *Placid Oil Co.*, at 398 (quoting *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978)).
[53] *Id.* (emphasis added).
Document Number: 43863

Plaintiff's Section 1983 claims under *Monell v. Department of Social Services*,[54] and vicarious liability claims under Section 1983, Plaintiff's hostile work environment claims, and any state law tort claims. Plaintiff maintains she is entitled to summary judgment on these same claims and further contends she is entitled to prospective injunctive relief and reinstatement to her former position.[55]

### Municipal Liability Under Section 1983

Under Title 42 U.S.C. § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Further, "Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights."[56] Thus, to state a claim under 42 U.S.C. § 1983, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law."[57] A plaintiff is also required to identify defendants who were personally involved or whose acts are causally connected

---

[54] 436 U.S. 658 (1978).

[55] In Plaintiff's *Opposition* to the School Board's motion also includes a cross-motion for summary judgment on her claim under the Consolidated Omnibus Budget Reconciliation Act (COBRA), 26 U.S.C. § 4980(b)(F). Not only is Plaintiff's pleading in violation of the Local Rules of Court which prohibit filing a motion and an opposition in the same pleading, but Plaintiff's summary judgment motion on her COBRA claim was untimely and therefore stricken by the Court. Rec. Doc. No. 133.

[56] *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (citing *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)).

[57] *Moore v. Willis Indep. Sch. Dist.,* 233 F.3d 871, 874 (5th Cir. 2000).

Document Number: 43863

to the alleged constitutional violation.[58]

It is undisputed that, under Louisiana law, the School Board is a political subdivision of the State of Louisiana.[59]  Under Section 1983, municipalities and other local government units, such as school boards, are considered persons subject to liability.[60]  However, only an official School Board policy or custom could expose the School Board to liability for constitutional rights violations.[61]  "Municipal liability under 42 U.S.C. § 1983 requires proof of 1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights whose 'moving force' is the policy or custom."[62]  Additionally, municipal liability cannot merely be sustained under a theory of *respondeat superior*.[63]

To sustain a claim for municipal liability, the policymaker must have final policymaking authority.[64]  "[W]hether a particular official has final policymaking authority is a question of *state law*."[65]  Moreover, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff" for the necessary determination to be made on the policy's relative constitutionality.[66]

Plaintiff seems to dispute the applicability of *Monell* to this case, which highlights her misunderstanding of the law applicable to her Section 1983 claims.  In Plaintiff's *Memorandum in Support of Motion for Partial Summary Judgment*,[67] Plaintiff neither

---

[58] *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir.2005) (citing *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir.1995)).
[59] *See* La. R.S. 13:5102(B)(1).
[60] *Monell* ,436 U.S. at 691.
[61] *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003).
[62] *Id.* (citations omitted).
[63] *Id.* (citing *Bd. of County Comm 'rs of Bryan County v. Brown*, 520 U.S. 397, 403, (1997)).
[64] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).
[65] *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (internal quotations omitted) (emphasis in original).
[66] *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).
[67] Rec. Doc. No. 109-1.
Document Number: 43863

mentions *Monell* nor does she discuss the elements thereunder or how she has satisfied those elements. In Plaintiff's *Opposition* to the School Board's motion, she states: "To the extent that <u>Monell</u> is applicable to the instant case, it is only applicable to Plaintiff's claim for damages, as her claims for prospective relief and injunctive reinstatement are within the exception to sovereign immunity." This is incorrect as a matter of law. The Court takes no issue with Plaintiff's reliance on *Ex Parte Young* for the proposition that she can seek prospective injunctive relief from a municipality.[68] However, to establish her entitlement to the requested relief, Plaintiff must first establish liability to achieve the relief sought, and that requires Plaintiff to satisfy *Monell*. Plaintiff's argument that *Monell* is somehow inapplicable because she seeks injunctive relief is untenable. Indeed, the petitioners in the *Monell* case sought injunctive relief.[69]

The plaintiffs in *World Wide Street Preachers' Fellowship v. Town of Columbia, La.*[70] made the same argument advanced by Plaintiff herein. The court stated: "The Preachers contend that *Monell* is inapplicable because they seek only injunctive and declaratory relief. However, the Preachers' contention is legally incorrect."[71] The court continued: "In this Circuit, the appellate court has not directly addressed this issue, but has applied *Monell*'s custom or policy requirement to a case where the plaintiff sought only declaratory and injunctive relief."[72] For this reason, the court found that the plaintiffs'

---

[68] *See Jones v. Texas Juvenile Justice Dept.*, 646 Fed. Appx. 374, 376 (5th Cir. 2016)("Notwithstanding the Eleventh Amendment, a plaintiff may sue 'individual persons in their official capacities as agents of the state' in federal court if 'the relief sought' is 'declaratory or injunctive in nature and prospective in effect.' This exception to Eleventh Amendment immunity is known as the *Ex parte Young* doctrine, and it is 'based on the legal fiction that a sovereign state cannot authorize an agent to act unconstitutionally.'")(internal citations omitted).
[69] *Monell*, 436 U.S. at 661.
[70] No. , 2008 WL 920721 (W.D. La. Apr. 3, 2008).
[71] *Id.* at *5.
[72] *Id.* at *6 (citing *Gabriel v. City of Plano*, 202 F.3d 741, 744-45 (5th Cir. 2000)).

Document Number: 43863

"position is legally incorrect and that they [were] required to show an official policy or custom resulting in their alleged constitutional injury."[73]  Accordingly, any suggestion that Plaintiff herein is not required to satisfy *Monell* because she seeks prospective injunctive relief is legally incorrect.  The Court now turns to the test for *Monell* liability.

### a.  Policymaker

It is undisputed that Louisiana law designates that the School Board is the official policymaker for the East Baton Rouge Parish School System pursuant to La R.S. 17:81, which makes this designation for all city and parish school boards.[74]  Although Plaintiff does not allege that the School Board is a final policymaker in her *Complaint* or *Amended Complaint*, Plaintiff does acknowledge in her *Opposition* to the School Board's motion that the School Board is the final policymaker for the School System.[75]

### b.  Official Custom or Policy that is the Moving Force Behind Constitutional Violations

The Fifth Circuit defines an "official policy" as follows:  "An official policy, for purposes of § 1983 liability, is '[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority.'"[76]  Courts have defined custom as a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and

---

[73] *Id.*
[74] Rec. Doc. No. 112-1 at 3.
[75] *See* Rec. Doc. No. 111-1 at 3.
[76] *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000)(quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984) (*en banc*)).
Document Number: 43863

well settled as to constitute a custom that fairly represents municipal policy."[77]

Plaintiff contends the School Board implements an illegal custom or policy of placing employees in interim or temporary positions for the purpose of depriving them of their property interests in their employment and to deprive interim or temporary employees of their substantive and procedural due process rights. Plaintiff claims her relationship with the School Board is governed by La. R.S. 17:444. Plaintiff argues that "a literal reading of RS 17:444 makes it clear that all persons employed under this provision shall have a written contract with the requisite provisions; including those hired to fill temporary positions."[78]

As evidence of a custom or policy, Plaintiff offers the deposition testimony of Defendant Tatman, the School Board President at the relevant time. When asked if there was a policy for interim appointments and principals, Tatman responded: "I don't know if there was a policy per se. It was my understanding that the interims were appointed in lieu of a full contract principal."[79] Plaintiff also offers former School Board President Barbara Freiberg's ("Freiberg") testimony that the hiring of interim principals started before Dr. Taylor's tenure because, at the time Dr. Taylor became superintendent, there were already employees serving in interim positions.[80] Plaintiff also relies on the deposition testimony of Defendant Williams, Executive Director of Human Resources, who testified that interim meant "temporary,"[81] and that the superintendent could remove

---

[77] *Campbell v. City of San Antonio,* 43 F.3d 973, 977 (5th Cir. 1995)( citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984); *Matthias v. Bingley*, 906 F.2d 1047, 1054 (5th Cir.1990).
[78] Rec. Doc. No. 112-1 at 4-5.
[79] Rec. Doc. No. 112-3 at 15 (Deposition of David Tatman, p. 29, lines 2-4).
[80] *Id.* at 22 (Deposition of Barbara Freiberg, p. 7).
[81] *Id.* at 24 (Deposition of Millie Williams, p. 7, line 14).
Document Number: 43863

someone in an interim position "at any time"[82] and for no reason at all because the position is temporary.[83] Plaintiff maintains this testimony demonstrates that the School Board utilized an illegal policy, practice, or custom of hiring principals as interims in violation of La. R.S. 17:444.

The School Board challenges Plaintiff's alleged evidence of an official policy or custom. The School Board claims that, after extensive discovery and deposing several School Board members, Plaintiff has never identified an actual policy, and this is because one does not exist. The School Board also argues that Plaintiff has presented no evidence showing that this widespread practice existed solely for the purpose of depriving employees their due process rights. Plaintiff's claim arises from a single decision made by Dr. Taylor, who is not a Defendant in this matter, is not a final policymaker under the law, and whose actions cannot be attributed to the School Board under any theory of vicarious liability.

The Court finds that Plaintiff has failed to present summary judgment evidence of an official custom or policy utilized by the School Board to place employees in interim positions for the sole purpose of depriving employees of their constitutional rights. First, Plaintiff cherry picks portions of deposition testimony that do not adequately represent the testimony of the deponents. Tatman did testify as Plaintiff cited above; however, Tatman also testified that the superintendent made these interim appointments, and it was not a process that the School Board would be involved in at all.[84] Likewise, when asked if interim hiring was a policy of the School Board, Freiberg testified: "No, sir, we don't set

---

[82] *Id.* (Deposition of Millie Williams, p. 8, line 17-18).
[83] *Id.* at 25 (Deposition of Millie Williams, pp. 9-10).
[84] *Id.* at 15 (Deposition of David Tatman, p. 29, lines 12-14).
Document Number: 43863

policy concerning whether somebody is interim or not interim."[85]  Millie Williams' testimony expounded on the meaning of interim or temporary status from a Human Resources perspective.  Williams explained that Human Resources advertised for applicants to apply for placement in a "principal pool" for several schools, not any specific school.[86]  She further explained that, "[a]t that time, we hired most principals temporarily to see if it was a good fit for that school and to look at the leadership of that person."[87]  Williams also testified that the applicants who applied to be in the principal pool did so with the full knowledge and understanding that the potential positions were on a temporary basis.[88]

Assuming *arguendo* that the School Board Superintendents' so-called "policy" of hiring interim positions to evaluate an applicant's fitness for the school and the position could be attributed to the School Board,[89] the record is devoid of any evidence of a causal connection to this "policy" being the "moving force" behind a widespread practice of constitutional violations.  Indeed, Plaintiff has not offered evidence that, in widespread fashion, other School System employees have been placed in interim positions resulting in the deprivation of their constitutional rights.  Further, there is no discussion, argument, or legal authority offered by Plaintiff that the School Board implemented such a policy with deliberate indifference to the obvious consequence of constitutional deprivations.  A

---

[85] *Id.* at 22 (Deposition of Barbara Freiberg, p. 7, lines 18-19.).
[86] *Id.* at 24 (Deposition of Millie Williams, pp. 6-7).
[87] *Id.* at 24 (Deposition of Millie Williams, p.7, lines 19-21).
[88] *Id.* at 24 (Deposition of Millie Williams, pp. 8-9).
[89] *See Pemberton v. West Feliciana Parish School Bd.*, No. 09-30-C, 2010 WL 431572 at *4 (M.D. La. Feb. 3, 2010)("[Municipalities] can be sued directly under § 1983 for monetary damages when the action that is alleged to be unconstitutional implements or executes a policy officially adopted and promulgated by that body's officers or results from a governmental custom which has not received formal approval through the body's official decisionmaking channels, but nonetheless fairly represents their policy. *Monell* v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Palmer v. City of San Antonio, Texas*, 810 F.2d 514 (5th Cir.1987).").
Document Number: 43863

plaintiff must "demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."[90] "Deliberate indifference is a high standard—'a showing of simple or even heightened negligence will not suffice.'"[91]

The Court also finds that the record evidence does not support Plaintiff's claim that she had a constitutional property right in her interim principal position. Plaintiff's reliance on La. R.S. 17:444 is misplaced. This statute reads, in relevant part, as follows:

> B. (1) Whenever a teacher who has acquired tenure, as set forth in R.S. 17:442, in a local public school system or the special school district is promoted by the superintendent by moving such teacher from a position of lower salary to one of higher salary, such teacher shall not be eligible to earn tenure in the position to which he is promoted, but shall retain any tenure acquired as a teacher, pursuant to R.S. 17:442.
>
> ****
>
> (4)(a)(i) Except as provided otherwise by R.S. 17:54(B), relative to the maximum term of a superintendent of schools elected by a city or parish school board, the employment provided for in this Section shall be for a term of not less than two years, **except when such employment is for a temporary position**, nor more than four years, and said term shall be specified in a written contract, which shall contain performance objectives.[92]

Further, Paragraph XI of Plaintiff's contract, dated July 1, 2009 and signed by Plaintiff reads as follows:

> If, during the term of this contract, Appointee is offered appointment to a position of higher salary, then the acceptance of such appointment shall cause this contract to have no further effect whatsoever, as of the date of such acceptance.[93]

Plaintiff has not offered summary judgment evidence that contradicts this contract language or creates a material issue of fact as to the termination of her previous contract.

---

[90] *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407 (1997).
[91] *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010)(quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Brown*, 520 U.S. at 407, 117 S.Ct. 1382)).
[92] Emphasis added.
[93] Rec. Doc. No. 110-2 at 4.
Document Number: 43863

By its very clear terms, to which Plaintiff agreed, the previous contract terminated when she was chosen to serve as interim Principal at Twin Oaks, a position that carried a higher salary, even if temporary.

Plaintiff also complains that her removal from the interim principal position and reassignment to teacher violated state law and her due process rights. She contends the School Board violated La. R.S. 17:418 by "demoting" her to a teaching position. Even accepting Plaintiff's characterization of her reassignment to teacher as a "demotion," the alleged violation of a state statute does not necessarily create a federal property interest right. The School Board and individual Defendants maintain that Plaintiff cannot "bootstrap" state law to create a federal property interest in her employment. The Fifth Circuit has held: "Section 1983 is a remedy for violations of constitutional rights, not violations of state law."[94] Further, "[a] violation of state law without more is insufficient to establish a constitutional violation."[95] To the extent the School Board failed to follow its own state mandated or internal procedures, Plaintiff has failed to show that she had a federal property right in these procedures that is actionable under Section 1983. School system grievance procedures do not implicate federally protected rights.[96]

The Court has considered the evidence presented and finds, as a matter of law, that Plaintiff had no federal property interest in the interim principal position at Twin Oaks. Further, to the extent Plaintiff complains that her alleged "demotion" and grievance procedures were not conducted in compliance with School System policy, the Court finds

---

[94] *Bush v. City of Gulfport, Miss.*, 454 Fed. Appx. 270, 280 (5th Cir. 2011)(citing *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005)).

[95] *Dallas v.Stevens*, 62 F.3d 394 (5th Cir. 1995)(citing *Levitt v. University of Texas at El Paso*, 759 F.2d 1224, 1230 (5th Cir.), *cert. denied*, 474 U.S. 1034 (1985)).

[96] *See Evans v. City of Dallas*, 861 F.2d 846, 850 (5th Cir. 1988).

Document Number: 43863

that these alleged state law violations and/or procedural deficiencies do not give rise to a federally protected right subject to Section 1983.  As there is no summary judgment evidence of a widespread custom or policy implemented by the School Board that is the moving force behind a pattern or practice of depriving employees of their constitutional rights, and Plaintiff failed to establish a constitutional property right in her continued employment as an interim principal, summary judgment is warranted in favor of the School Board on Plaintiff's Section 1983 claims.  The law is clear that the School Board cannot be held vicariously liable under Section 1983 for the conduct of individual School Board members/employees.

The Court now turns to consideration of the Section 1983 claims brought against the individual Defendants.  Other claims brought against the School Board will be addressed below contemporaneous with the same claims asserted against the individual Defendants.

### C.  Defendants Tatman, Drake, D. Rutledge, Williams, and S. Rutledge

The individually named Defendants, sued in both their individual and official capacities, have moved for summary judgment on several grounds.  Defendants claim they are entitled to summary judgment on the official capacity claims under Section 1983, the individual capacity claims under Section 1983, the defense of qualified immunity, the Section 1983 hostile work environment claim, and all other state law claims pursuant to statutory immunity.  The Court will address each of these claims in turn.

### 1.  Official Capacity Claims under Section 1983

Defendants move to dismiss official capacity claims brought against them under relevant jurisprudence holding that official capacity claims are redundant when a plaintiff

Document Number: 43863

has also sued the public entity, in this case, the School Board. Plaintiff claims the official capacity claims against the Defendants are not redundant because she seeks injunctive relief and reinstatement pursuant to the *Ex Parte Young*[97] exception to sovereign immunity. However, Defendants have not raised a sovereign immunity defense to these claims, and this argument is irrelevant on this issue.

In *Delouise v. Iberville Parish School Board*,[98] this Court addressed a similar case where a plaintiff sued both a school board and the school board members in their official capacities. The Court explained:

> "Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"[99] "Actions for damages against a party in his official capacity are, in essence, actions against the governmental entity of which the officer is an agent."[100] Courts have recognized situations where claims against individual defendants in their official capacities must be dismissed because the claims are duplicative of those brought against a government entity. In *J.D. v. Georgetown*, the plaintiff brought suit against the Georgetown ISD School District and against the President of the School Board for retaliation pursuant to Section 504 of the Rehabilitation Act and the Americans with Disabilities Act.[101] The Court found that a suit against the President of a School Board in his official capacity was redundant of the suit against the School Board itself, and dismissed the claim against the President.[102]

This is precisely the same scenario presented in the case before the Court. Because Plaintiff has sued both the public entity (the School Board) and the School Board members/employees in their official capacities, the official capacity claims brought against

---

[97] *Ex Parte Young*, 209 U.S. 123 (1908).
[98] 8 F. Supp. 3d 789 (M.D. La. 2014).
[99] *Id.* at 807 (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978))).
[100] *Id.* (quoting *J.D. v. Georgetown Independent School Dist.*, 2011 WL 2971284, at *4 (W.D.Tex.7/11/2011) (citing *Familias Unidas v. Briscoe*, 619 F.2d 391, 403 (5th Cir.1980))).
[101] *Id.* (citing *J.D. v. Georgetown*, at *1).
[102] *Id.* (citing J.D. v. Georgetown, at *1).
Document Number: 43863

the individual Defendants are redundant and shall be dismissed under applicable jurisprudence.  The individual Defendants are entitled to summary judgment on Plaintiffs' official capacity claims brought against them.

### 2.  Individual Capacity Claims Under Section 1983 – Qualified Immunity

As to Plaintiff's individual capacity claims brought against the Defendants, the Defendants have asserted the defense of qualified immunity.  "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[103]  "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[104]  A plaintiff can overcome a qualified immunity defense by showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[105]  The Fifth Circuit has stated:  "As a prerequisite, a plaintiff 'must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged.'"[106]

The Court has already found that Plaintiff suffered no constitutional deprivation in her removal from the interim principal position at Twin Oaks.  Nevertheless, the individual Defendants argue that none of them can be liable in their individual capacities for her removal from this position as they were not personally involved.  Superintendent Drake's

---

[103] *Mullenix v. Luna*, —— U.S. ——, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).
[104] *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).
[105] *Ashcroft v. al–Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).
[106] *Roberts v. City of Shreveport*, 397 F.3d 287, 291-92 (5th Cir. 2005)(quoting *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir.1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir.1983))).
Document Number: 43863

participation was impossible because he was not employed by the School Board at the time the removal occurred – October 4, 2014. Indeed, the record evidence reflects that Drake's tenure with the School Board began nine months after Plaintiff was removed from this position on April 2, 2015.[107]

As to Tatman, S. Rutledge, Williams, and D. Rutledge, the Court notes that no summary judgment evidence has been presented in this matter which directly connects the conduct of these individual Defendants to Plaintiff's removal from the interim principal position. The record reflects that the only person who allegedly failed to address Plaintiff's grievances and "demoted" her to a teaching position with a lower salary was Dr. Taylor, who is not a defendant in this case, and who was not a final policymaker such that his actions can be attributed to the School Board. Even if Plaintiff had produced some evidence connecting any of these Defendants to her removal from Twin Oaks, it is undisputed that these Defendants are not final policymakers and, under Louisiana law, none of them had the statutory authority to make unilateral employment decisions concerning the Plaintiff.

Accordingly, as to Plaintiff's Section 1983 claims against the individual Defendants for her removal from the interim principal position at Twin Oaks, the Defendants are entitled to qualified immunity, and summary judgment is appropriate in favor of the individual Defendants in their individual capacities on this claim.

### 3. Section 1983 Hostile Work Environment/Constructive Discharge

Plaintiff has asserted Section 1983 claims of hostile work environment and

---

[107] Rec. Doc. No. 107-3 at 22-23.
Document Number: 43863

constructive discharge, and she discusses these claims interchangeably. Plaintiff avers in her *Complaint* numerous incidents where she was allegedly verbally assaulted and harassed,[108] bullied and treated cruelly,[109] badgered,[110] threatened with write ups and termination,[111] intimidated and forced to sign documents against her will,[112] wrongfully placed on administrative leave,[113] required to undergo a psychological evaluation,[114] had the delivery of her mail manipulated,[115] and had her pay intentionally withheld.[116] Plaintiff has asserted her hostile work environment claim pursuant to Sections 1981, 1983, and 1985.[117] However, in Plaintiff's *Memorandum in Support of Motion for Partial Summary Judgment*,[118] there is no reference to a hostile work environment claim, and the Court could not locate any discussion of, or reference to, a *prima facie* case for hostile work environment in any brief submitted by Plaintiff on this matter.

In opposition briefs, Plaintiff claims that she must only prove either hostile work environment or constructive discharge as "proof of this additional claim would be redundant."[119] Not only is this statement unsupported by any legal authority, courts addressing similar cases wherein both claims are asserted routinely address both claims, and Plaintiff is not relieved from the burden of establishing a *prima facie* hostile work environment claim simply because she chooses to offer "proof" only for her constructive

---

[108] Rec. Doc. No. 1, ¶ 22, 43
[109] *Id.* at ¶ 54.
[110] *Id.* at ¶ 80.
[111] *Id.* at ¶ 23.
[112] *Id.* at ¶ 36.
[113] *Id.* at ¶¶ 40-41.
[114] *Id.* at ¶ 52.
[115] *Id.* at ¶ 60.
[116] *Id.* at ¶ 75-76; 80.
[117] *Id.* at ¶ 2.
[118] Rec. Doc. No. 109-1.
[119] Rec. Doc. No. 112-1 at 9.
Document Number: 43863

discharge claim. While there is some overlap in the proof required to sustain both claims, the law is clear that these claims are distinct. Indeed, "[c]onstructive discharge requires a *greater degree of harassment* than that required by a hostile environment claim."[120]

Under Section 1981, a prima facie case of harassment alleging a hostile work environment consists of five elements: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on plaintiff's protected status; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[121]

Markedly absent from the *Complaint*, Plaintiff's motions, and all supporting and opposition memoranda are allegations and evidence that Plaintiff belonged to a protected group and that the harassment complained of was based on Plaintiff's protected status. There is no evidence in the record from which the Court could draw an inference that Plaintiff was allegedly subjected to a hostile work environment based on her race, gender, age, or any other protected status. Plaintiff's status as a tenured teacher or employee of the School System is insufficient to state a claim for a hostile work environment under Section 1983. Thus, all Defendants are entitled to summary judgment on Plaintiff's hostile work environment claim.

The Court now turns to Plaintiff's constructive discharge claim. Although Plaintiff ultimately submitted her resignation to the School Board rather than report to her teaching

---

[120] *Lauderdale v. Texas Dept. of Criminal Justice, Inst. Div.*, 512 F.3d 157, 167 (5th Cir. 2016)(quoting *Kinney Shoe*, 237 F.3d at 566)(emphasis added).
[121] *Jones v. Bd of Supervisors of the University of Louisiana System*, No. 14-2304, 2015 WL 7281614 at *4 (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001) (citations omitted)).
Document Number: 43863

reassignment, Plaintiff claims that she was constructively discharged from her position as a tenured teacher with the School System.[122]  The law is clear that "tenured teachers have a constitutionally protected property interest in continued employment."[123]  It is undisputed that, at all times relevant to this matter, Plaintiff was a tenured teacher. Defendants do not dispute that, as a tenured teacher, Plaintiff had a constitutionally protected property interest in her continued employment as a teacher.   However, Defendants contend Plaintiff was never terminated from this position but instead chose to submit her resignation rather than comply with the School Board's requirements for her return to work as a teacher.

"[A] resignation may still constitute an adverse employment action 'if the resignation qualifies as a constructive discharge.' 'To prove a constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign.'"[124]   Thus, the Plaintiff must show that a "reasonable person in [her] shoes would have felt compelled to resign."[125]  This objective

---

[122] Plaintiff relies on the Supreme Court's recent decision in *Green v. Brennan*, a case where the Court addressed the statute of limitations for a constructive discharge claim that was alleged but dismissed. Plaintiff cites specifically to this portion of the Court's holding: "[w]e do not also require an employee to come forward with proof—proof that would often be difficult to allege plausibly—that not only was the discrimination so bad that he had to quit, but also that his quitting was his employer's plan all along."  136 S.Ct. 1769, 1779-80 (2016).  While this is a correct quote from *Green*, the procedural posture in *Green* was not at the summary judgment stage.  As this matter is before the Court on cross-motions for summary judgment, this particular statement from *Green* is inapplicable here.  Plaintiff *is* required at the summary judgment stage to present summary judgment proof that she was constructively discharged.  It is insufficient at this stage that she merely makes this allegation.
[123] *Griffin v. Jefferson Parish School Bd.*, 2002 WL 1468034 at *2 (quoting *Franceski v. Plaquemines Parish Sch. Bd.*, 772 F.2d 197, 199 (5th Cir.1985)).
[124] *Brown v. Liberty Mut. Grp., Inc.*, 616 Fed.Appx. 654, 657 (5th Cir. 2015) (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)).
[125] *Rayborn v. Bossier Parish School System*, 198 F.Supp.3d 747, 760 (W.D. La. 2016); *Landgraf v. USI Film Products*, 968 F.2d 427, 429 (5th Cir.1992) (quoting *Bourque v. Powell Electrical Mfg. Co.*, 617 F.2d 61, 65 (5th Cir.1980))(internal quotation marks omitted).
Document Number: 43863

test has been referred to as the "reasonable employee test."[126]  In making this determination, a court considers various factors including: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; and (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.[127]  Additionally, "a plaintiff's subjective perception that a demotion has occurred is not enough."[128]

Sustaining a claim of constructive discharge requires a "greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment."[129]  As explained by the District Court for the Western District of Louisiana:

> The Fifth Circuit has declined to expand the list of adverse employment actions "to ensure that § 1983 does not enmesh federal courts in 'relatively trivial matters.'"  By way of example, "**in the education context, [the Fifth Circuit] has held that decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures, while extremely important to the person who dedicated his or her life to teaching, do not rise to the level of a constitutional deprivation**."[130]

Plaintiff claims that Dr. Taylor's October 9, 2014 letter advising that he was considering terminating her employment with the School System failed to advise her, in accordance with School System policy, that she was entitled to a pre-termination hearing. Further, Plaintiff maintains that she responded by letter dated October 23, 2014 advising Dr. Taylor that she was a contract employee that could not be terminated for "willful

---

[126] *Stover v. Hattiesburg Public School Dist.*, 549 F.3d 985 (5th Cir. 2008).
[127] *Id.* (citing *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 481 (5th Cir.2008)).
[128] *Forsyth v. City of Dallas, Tex.*, 91 F.3d 769,774 (5th Cir.1996).
[129] *Rayborn*, 198 F.Supp.3d at 760 (citing *Landgraf*, 968 F.2d at 430 (citing *Pittman v. Hattiesburg Municipal Separate School District*, 644 F.2d 1071, 1077 (5th Cir.1981))).
[130] *Id.* at 761 (internal citations and quotations omitted)(emphasis added).
Document Number: 43863

neglect of duty."[131]   Plaintiff claims that Dr. Taylor never responded to this communication or request for a hearing.

When Plaintiff met with Williams on November 14, 2014 to pick up a paycheck, Plaintiff claims that she was "required to attend an impromptu meeting" with D. Rutledge before her check would be delivered.[132]   Plaintiff claims that D. Rutledge "erroneously" informed Plaintiff that she failed to timely request a hearing, and that if she was entitled to a hearing on prior disciplinary actions, she had waived such a hearing.[133]   Ultimately, in Plaintiff's supporting memoranda, her only allegations brought under the claim of constructive discharge refer to her mistaken belief that she had a property interest in her interim principal position, and she was being denied a hearing in violation of her due process rights.  These allegations are irrelevant to a claim for constructive discharge and in no way provide argument or evidence to the Court to sustain a constructive discharge claim.

However, in her opposition briefs, Plaintiff expounds on her constructive discharge claim.   Plaintiff claims that, on June 2, 2014, her supervisor Vera Dunbar presented Plaintiff with a letter stating that Plaintiff was requesting a transfer to a lower position, and demanded that Plaintiff sign the letter or she would be demoted or fired.  Plaintiff claims Dr. Taylor inquired about Plaintiff's intent to sign the letter, and Plaintiff memorialized this exchange in a letter to Dr. Taylor dated June 2, 2014 wherein she explains that she felt

---

[131] The Court has explained above in this opinion that Plaintiff was not a contract employee based on her acceptance of the interim principal position at Twin Oaks.
[132] Rec. Doc. No. 109-1 at 19.
[133] Plaintiff places these alleged statements by D. Rutledge in quotes in Rec. Doc. No. 109-1, p. 19; however, there is no citation to evidence containing these alleged statements.

Document Number: 43863

she had no choice but to sign the letter presented to her by Vera Dunbar.[134]

Plaintiff also takes issue with the handling of the parental complaint that precipitated her placement on administrative leave in September 2014 while the matter could be fully investigated. Plaintiff contends she provided statements regarding the incident when requested, met with the parent, and believed the matter had been resolved.

Plaintiff claims that she was offered continued employment on less favorable terms by Williams on September 4, 2014. Specifically, Plaintiff contends, and Williams testified, that Plaintiff was offered a position as assistant principal at Sherwood Middle School subject to a good report following Plaintiff's psychological evaluation.[135] Plaintiff contends she declined to accept this transfer to a lower position with a reduction in pay. Plaintiff also claims that, on September 30, 2014, her employment contract was terminated, she was demoted, her salary was reduced by $15,000.00, and she received no salary after May 2015.[136]

Plaintiff further claims that, although she sent letters of complaint to Drake regarding her alleged harassment, he did nothing to protect her or address her issues concerning her reassignment to classroom teacher. Plaintiff avers that the grievances she filed against certain Defendants have been ignored, and she has never received a hearing or an explanation of findings for the investigations brought against her.[137] She also alleges the Defendants stopped paying her health insurance in August 2015.[138]

---

[134] *See* Rec. Doc. No. 116-3 at 23-24.
[135] *See* Rec. Doc. No. 110-3 at 6 (Deposition of Millie Williams, pp. 21-23).
[136] Plaintiff cites to Rec. Doc. No. 116-3 at 47, the letter from Dr. Taylor to Plaintiff, dated September 30, 2014, which sets forth the reasons for Plaintiff's reassignment to a classroom teacher following a psychological evaluation. However, this letter does not reference or establish Plaintiff's assertions regarding her alleged reduction in pay/non-payment.
[137] *See* Rec. Doc. No. 116-3 at 80-88.
[138] Plaintiff's COBRA claims have previously been dismissed.
Document Number: 43863

Defendants acknowledge that, on October 9, 2014, Dr. Taylor advanced charges against Plaintiff to potentially terminate her employment as a tenured teacher. However, Defendants cite to Plaintiff's deposition testimony wherein she admitted to writing a letter, dated November 17, 2014, acknowledging that she was aware that Dr. Taylor decided not to pursue disciplinary proceedings against her. Plaintiff was presented with the letter at her deposition, and she admitted that it was a letter she wrote to D. Rutledge following their previous meeting.[139] Plaintiff was asked to read portions of this letter during her deposition.[140] Plaintiff testified that her November 17 letter addressed to D. Rutledge read, in relevant part, as follows:

> First of all, let me thank Mr. Rutledge for his letter clarifying his superintendent, Bernard Taylor, is not taking any disciplinary action against me based on the charges contained in his letter of October 9th, 2014, and that the superintendent's nonaction disciplinary decision is final.[141]
>                                             . . .
> This removes any concerns that I had that the superintendent was keeping this matter hanging over my head indefinitely[142] … I have been waiting on the superintendent's decision in writing, but I will accept Mr. Rutledge's letter and other statements that he made in the meeting as being the final word on that issue.[143]

Based on this deposition testimony and Plaintiff's November 17, 2014 letter which she admitted drafting and sending, Defendants contend Plaintiff knew the only disciplinary proceeding pending against her was withdrawn and final prior to the filing of her *Complaint*, *Amended Complaint*, and *Motion for Summary Judgment*.

Defendants also argue that the undisputed record evidence establishes that

---

[139] Rec. Doc. No. 110-4 at 21 (Deposition of Kathran Randolph, p. 84).
[140] This letter was attached as Exhibit F to Plaintiff's Deposition.
[141] Rec. Doc. No. 110-4 at 22 (Deposition of Kathran Randolph, p. 85, lines 17-23).
[142] *Id.* (Deposition of Kathran Randolph, p. 85, lines 9-11).
[143] *Id.* (Deposition of Kathran Randolph, p. 86, lines 1-5).
Document Number: 43863

Plaintiff was offered continued employment as a tenured teacher after she was released to return to work in February 2015. Furthermore, as Plaintiff has failed to establish a hostile work environment claim, she cannot succeed on a constructive discharge claim which requires a greater degree of proof.

Plaintiff argues that the Defendants have offered statements made in D. Rutledge's letter of November 12, 2014, which Plaintiff claims is inadmissible hearsay because this letter is not in evidence. However, it is not D. Rutledge's letter that Defendants offer in support of this argument, but rather Plaintiff's own letter which she admitted drafting and sending to D. Rutledge as an acknowledgement that she understood that the termination proceedings instituted against her by Dr. Taylor were withdrawn, and this decision was final.

The Court finds that Plaintiff has failed to carry the heavy burden of establishing that she was constructively discharged. The Court notes that Plaintiff repeatedly offers her own letters and deposition testimony as evidence of statements by other individuals. This is hearsay and improper as a matter of law.

While there is evidence that Plaintiff was removed from her interim principal position for cause, which resulted in her reassignment to a teaching position with a lower salary, this does not constitute a reassignment to menial or degrading work. Further, Plaintiff's proffered evidence of "badgering, harassment, or humiliation" does not satisfy the standard of extreme conduct that is so severe or pervasive that no reasonable employee would have remained. Plaintiff contends Drake harassed her by allowing the Human Resources Department to leave notes on her door, send her harassing letters

ordering her to go to the doctor, and by failing to respond to a letter she sent to him.[144]

Tatman allegedly harassed her by "ignoring" and not responding to Plaintiff's grievance letters and other correspondence.[145]   S. Rutlegde allegedly harassed Plaintiff by threatening to take her keys to the school, "writing up" certain conduct, embarrassing Plaintiff in front of a parent by questioning her sincerity, behaving unprofessionally, and making "little snide comments here and there" during meetings.[146] D. Rutledge allegedly harassed Plaintiff by making her and her husband wait outside his office for over an hour for a meeting, reading to her "like [she] was two-years-old," insulting her husband, and becoming angry when she asked for the results of her investigation.[147] Williams allegedly harassed Plaintiff by placing her on administrative leave pending the investigation, preventing her paycheck from being deposited, sending her letters she did not like, and having her come to the office to pick up a paycheck.[148]

Accepting all of Plaintiff's assertions as true, none of this conduct meets the standard to sustain a hostile work environment claim; thus, it certainly fails to sustain a claim of constructive discharge.  Considering the record as a whole, the alleged conduct is not the type that courts have found to constitute harassment and certainly not harassment that is sufficiently severe or pervasive to create a hostile work environment. "Criticism of an employee's work performance … and even threats of termination do not satisfy the standard for a harassment claim."[149]   "To survive summary judgment, the

---

[144] Rec. Doc. No. 107-4 at 2-3 (Deposition of Kathran Randolph, pp. 7-12).
[145] *Id.* at 4 (Deposition of Kathran Randolph, p. 16).
[146] *Id.* at 16 (Deposition of Kathran Randolph, p. 58).
[147] *Id.* at 5 (Deposition of Kathran Randolph, pp. 19-20).
[148] *Id.* at 6 (Deposition of Kathran Randolph, pp. 23-24).
[149] *Credeur v. Louisiana Through Office of Attorney General*, 860 F.3d 785, 796 (5th Cir. 2017)(citing e.g., *Kumar v. Shinseki,* 495 Fed.Appx. 541, 543 (5th Cir. 2012) (criticism in the workplace and threats to employee's job did not constitute actionable harassment)).
Document Number: 43863

harassment must be 'so severe [or] pervasive that it destroys a protected classmember's opportunity to succeed in the workplace.'"[150]  "The alleged conduct must be more than rude or offensive comments, teasing, or isolated incidents."[151]  Nothing Plaintiff has alleged as harassing conduct meets this high standard.  Further, the Court finds that the majority of the conduct Plaintiff agues is harassing were clearly "decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures," that the Fifth Circuit held "do not rise to the level of a constitutional deprivation."[152]  Because Plaintiff has failed to offer satisfactory proof for her hostile work environment claim, and a constructive discharge claim requires stronger proof, Plaintiff's constructive discharge claim fails *a fortiori*.

It is also necessary to consider the Defendants' alleged conduct in the context of Plaintiff's own, undisputed conduct.  The documentary evidence overwhelmingly establishes that Plaintiff was repeatedly uncooperative and insubordinate. Although Plaintiff was clearly unhappy about the investigation of the parental complaint, the Fifth Circuit has held that these types of investigations - even making purportedly false accusations - are not adverse employment actions.[153]  Further, as Plaintiff was placed on paid administrative leave, she suffered no adverse employment action with respect to the

---

[150] *Olmeda v. Cameron Intern. Corp.*, 139 F.Supp.3d 816, 831 (E.D. La. 2015)(quoting *Shepherd v. Comptroller of Public Accounts of State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999)).

[151] *Hockman v. Westward Communications, LLC*, 407 F.3d 317 (5th Cir.2004) (citing *Shepherd*, 168 F.3d at 874); *Lauderdale*, 512 F.3d at 163 (5th Cir.2007) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ("Title VII ... is not a 'general civility code,' and 'simple teasing,' off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' ")).

[152] Note 130, *supra.*

[153] *See Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000)(citing *Pierce v. Texas Dept. Crim. Justice*, 37 F.3d 1146, 1150 (5th Cir. 1994)0; *Colson v. Grohman*, 174 F.3d 498, 511 (5th Cir. 1999); see also *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998).

leave,[154] and any oral threats or abusive remarks by an employer or co-workers do not rise to the level of an adverse employment action under Fifth Circuit precedent.[155]

The evidence of correspondence establishes that, although Plaintiff was required to remain accessible during school hours and be available for communication with her employer during administrative leave, she flagrantly refused to comply with these requirements. Plaintiff demanded that all communication be done in writing,[156] which frustrated the purposes of the investigation and delayed its progress. The October 9, 2014 correspondence from Dr. Taylor to Plaintiff, cited many times by all Parties, reflects Plaintiff's continuous lack of cooperation while on administrative leave. Dr. Taylor recounts several occasions that Plaintiff would not respond to contact by telephone, email, or letter; Plaintiff's failure to appear for the scheduled psychological evaluation; Plaintiff's failure to appear at scheduled meetings, and Plaintiff's failure to remain accessible to HR during work hours. Plaintiff's complaints about this letter focus on the alleged lack of a hearing; however, Plaintiff does not deny much of her alleged conduct.

Further, Plaintiff's text message to a School Board member mentioning suicide, which Plaintiff does not dispute, precipitated the need for Plaintiff to pass a fitness for duty evaluation. Plaintiff referred to this as a "preposterous examination";[157] however, it was not a unilateral, irrelevant requirement intended to harass Plaintiff, but was rather instigated by Plaintiff's own disturbing statement. The Fifth Circuit has held that requiring an employee to undergo a psychological evaluation after an "intemperate remark" to a

---

[154] *Id.*
[155] *Id.* (citing *Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir. 1997)).
[156] *See* Rec. Doc. No. 107-3 at 4-5.
[157] *Id.* at 5.
Document Number: 43863

fellow employee is not an adverse employment action.[158]

Plaintiff also claims that she was "forced" to sign documents against her will on a few occasions. Considering the entirety of the record, it strains credulity that Plaintiff claims she was "forced" to sign documents against her will, yet she drafts letters stating: "I am willfully telling you that I will not return to work at any place other than as Principal of Twin Oaks Elementary!"[159] The record is replete with evidence of Plaintiff's uncooperative, defiant, and obstructive behavior. Considering the Court's discretion to weigh evidence as this case is set for a bench trial, the Court finds that the weight of evidence in this case overwhelming establishes that Plaintiff was not constructively discharged, and Defendants are entitled to summary judgment on this claim.

### D. Louisiana Statutory Immunity

Defendants assert the defense of the immunity provided pursuant to La. R.S. 17:439(A), which provides, in relevant part, as follows:

> Except as otherwise provided in this Section, no person shall have a cause of action against any school employee based on any statement made or action taken by the school employee provided that the action or statement was within the course and scope of the school employee's duties as defined by the school board in which the school employee is employed and was within the specific guidelines for school employee behavior as established by that school board.

The Louisiana Supreme Court has held that a school employee may invoke the protections of Section 17:439(A) by establishing: (1) the cause of action against the employee is based on a statement made or action taken by the employee, (2) the action or statement was made in the course and scope of the employee's duties as defined by

---

[158] *Breaux*, 205 F.3d at 158.
[159] Rec. Doc. No. 109-2 at 74.
Document Number: 43863

the school board, and (3) the action or statement must be within the specific guidelines for school employee behavior as established by the school board.[160] The Louisiana Supreme Court determined that, "La. R.S. 17:439(A) precludes a cause of action against school employees for both acts of commission and acts of omission committed, as well as statements made, within the course and scope of their duties as defined by the school board and within the specific guidelines for employee behavior established by that school board."[161]

Plaintiff's opposition to Defendants' assertion of this immunity is: "Defendants' reliance on RS 17:439 is misplaced. Plaintiff's cause of action is for violation of her rights. If they acted illegally and outside of the course and scope of their employment, they are liable."[162] Despite this statement, Plaintiff fails to offer argument or legal authority that would support her claim that the Defendants acted outside the course and scope of their employment. Indeed, practically every alleged action by any Defendant in this case directly related to their employment duties with the School System and the status of Plaintiff's investigation and employment. The Court has already determined that neither the School Board nor the individual Defendants acted illegally; thus, they are entitled to the statutory immunity provided for any state law claims brought by Plaintiff, including her claim for IIED.[163] Accordingly, summary judgment shall be granted in favor of all Defendants on Plaintiff's state law claims.[164]

---

[160] *Credit v. Richland Parish Sch. Bd.*, 2011-103 (La. 3/13/12); 85 So.3d 669, 675–76.
[161] *Credit v. Richland Parish School Bd.,* 46, 163 (La. App. 2 Cir. 5/23/12); 92 So.3d 1175, 1178.
[162] Rec. Doc. No. 116-2 at 10.
[163] The Court notes in the alternative that Plaintiff could not satisfy her burden of proving that she suffered IIED for the same reasons she failed to prove a hostile work environment or constructive discharge.
[164] The Court notes that Defendants are also entitled to the immunity provided to public employees for discretionary acts performed within the course and scope of their duties h in La. R.S. 9:2798.1
Document Number: 43863

### E.  Plaintiff's *Motion to Disqualify Counsel*[165]

Nearly eight months after the Parties filed the foregoing motions for summary judgment in this case, Plaintiff filed a *Motion to Disqualify Counsel* claiming that Defense counsel should be disqualified because "defendants' actions raise potential defenses that are adverse to each other" which may require separate counsel for each individually named Defendant.[166]  The individual Defendants filed an *Opposition* to this motion.[167] Plaintiff's motion is untimely, speculative, unsupported, and moot as a result of the Court's *Ruling*.  Accordingly, the *Motion to Disqualify Counsel*[168] is DENIED.

## III.    CONCLUSION

For the reasons set forth above, the *Motion for Summary Judgment*[169] by Defendants David Tatman, Superintendent Warren Drake, Domoine Rutledge, Millie Williams, and Sharmayne Rutledge is GRANTED, and the *Motion for Summary Judgment*[170]  by Defendant East Baton Rouge Parish School Board is GRANTED.  The *Motion for Partial Summary Judgment*[171] filed by Plaintiff, Kathran Randolph is DENIED. Plaintiff's claims are dismissed with prejudice.

Because the Court has determined on summary judgment that the same evidence that would be presented to the undersigned during a bench trial could not possibly lead to a different result, the Bench Trial currently set to begin on April 2, 2018 is hereby CANCELED.  All other pending motions are DENIED as moot and are ordered to be

---

[165] Rec. Doc. No. 144.
[166] Rec. Doc. No. 144-1.
[167] Rec. Doc. No. 157.
[168] Rec. Doc. No. 144.
[169] Rec. Doc. No. 107.
[170] Rec. Doc. No. 108.
[171] Rec. Doc. No. 109.
Document Number: 43863

terminated by the Clerk of Court.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 26th day of March, 2018.

_____

**SHELLY D. DICK, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**